IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JON DEE MICAH PENNINGTON,

     Petitioner,

v.                                                Civ. No. 12-536 RB/GBW

UNITED STATES,

     Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before me on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody, *doc. 2*.  On September 24, 2012, Judge Brack dismissed all of Petitioner's claims save one—his allegation that his trial counsel was ineffective for failing to file an appeal.  *Doc. 12*. Having held an evidentiary hearing on that issue on May 3, 2013 (*see doc. 46*), I find that Petitioner has failed to demonstrate that his trial counsel was constitutionally ineffective.  I therefore recommend that the Court dismiss Petitioner's remaining claim and deny Petitioner's motion.

## I.    BACKGROUND

Petitioner Jon Dee Micah Pennington[1] was stopped on September 16, 2010, by a Border Patrol agent while driving a pickup truck containing marijuana.  *United States v. Pennington*, 2:11-cr-345 [hereinafter *Underlying Case*], *doc. 28* ¶ 8.  He was indicted on

---

[1] Petitioner is also known as Jon Dee Micha Pennington.

February 16, 2011, for violating 21 U.S.C. § 846 by "unlawfully, knowingly and intentionally combin[ing], conspir[ing], confederat[ing] and agree[ing] with Teresa Ann Johnson and other persons . . . to commit the following offense against the United States, to wit: possess with intent to distribute 100 kilograms and more of a mixture and substance containing a detectable amount of marijuana, contrary to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)." *Id., doc. 1.*

Petitioner was appointed a federal public defender, Ms. Jane Greek, on February 18, 2011. *Id., doc. 5.* On May 23, 2011, Petitioner signed a plea agreement in which he pled guilty to the indictment. *Id., doc. 28* ¶ 3. On October 4, 2011, Petitioner was sentenced to 60 months imprisonment followed by 4 years of supervised release. *Id., doc. 35* at 2-3. Petitioner did not file a notice of appeal.

On May 17, 2012, Petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. *Pennington v. United States*, 2:12-cv-536 [hereinafter *Instant Case*], *doc. 2.* Petitioner alleged ineffective assistance of trial counsel on two grounds: (1) his attorney failed to file an appeal despite Petitioner's instructions to do so; and (2) his attorney failed to object to the Presentence Investigation Report, which he alleges improperly assessed him three criminal history points. *Id.* On August 31, 2012, I issued my first Proposed Findings and Recommended Disposition (PFRD), recommending that the Court dismiss the second claim as meritless. *Id., doc. 10.* I found that an evidentiary hearing was necessary to resolve to the first claim because Petitioner and his trial

2

counsel, Ms. Greek, had provided contradictory affidavits regarding whether Petitioner requested an appeal. *Id*. at 6-8.

On September 24, 2012, the Court adopted my PFRD and ordered me to conduct an evidentiary hearing. *Id., doc. 12*. I appointed counsel for Petitioner on September 27, 2012, and scheduled an evidentiary hearing for January 14, 2013. *Id., docs. 14, 16*. Petitioner moved to dismiss appointed counsel on December 3, 2012. *Id., doc. 17*. I delayed the evidentiary hearing and held a hearing on that motion on February 14, 2013. *Id., docs. 18, 24, 27*. At the hearing, I advised Petitioner of the potential ramifications of dismissing his appointed counsel, including the fact that he is not entitled to the appointment of substitute counsel and that he may encounter difficulties in effectively presenting evidence and arguments at the evidentiary hearing without the aid of counsel. *Id., doc. 27*. Consequently, I denied the motion to dismiss counsel and directed Petitioner to file a subsequent motion to dismiss counsel if he still wished to proceed *pro se*. *Id., doc. 28*.

On March 11, 2013, Petitioner filed a second motion to dismiss appointed counsel. *Id., docs. 34 & 35*. In parallel, Petitioner's appointed attorney filed a motion to withdraw as counsel on March 15, 2013, stating that Petitioner was uncooperative and determined to proceed *pro se*. *Id., doc. 37*. On March 25, 2013, I granted both of those motions and terminated appointed counsel's representation of Petitioner. *Id., doc. 38*. Then, on April 10, 2013, Petitioner filed a motion asking that the Court give him an

opportunity "to attempt to retain counsel of choice." *Id., doc. 41* at 4.  I granted in part and denied in part that motion, finding that Petitioner is free to hire counsel of his choice to represent him at the evidentiary hearing but is not entitled to appointed counsel of his choice. *Id., doc. 42.*

I conducted the evidentiary hearing on May 3, 2013. *See id., doc. 46.*  Petitioner appeared *pro se* at the hearing. *Id.*  Both Ms. Greek and Petitioner testified. *Id., docs. 46, 48.*

## II.    PETITIONER WAIVED ATTORNEY-CLIENT PRIVILEGE

Prior to the evidentiary hearing, Respondent filed a motion requesting that the Court find that Petitioner had waived attorney-client privilege as to any issues raised in his § 2255 petition. *Id., doc. 44.*  I discussed the attorney-client privilege with Petitioner at length at the beginning of the evidentiary hearing. *Id., doc. 48* at 6:21-11:16.  Petitioner agreed to waive the privilege and I found that the waiver extended to

> any discussions about an appeal which occurred after Mr. Pennington's sentencing; any discussions about the waiver of appeal provision that's in the plea agreement; any discussions that occurred during plea negotiations; any discussions about the potential issues on appeal that Ms. Greek discussed with Mr. Pennington at any time during her representation; and any other discussions that might bear on determining the credibility of testimony provided at this hearing.

*Id.* at 10:22-11:13.  Respondent's motion is therefore granted with these limitations.

## III.   THE COURT WILL NOT SUBPOENA PETITIONER'S BROTHER

At the evidentiary hearing, Petitioner requested that the Court subpoena his brother to testify because Petitioner could not afford to pay for his transportation to the hearing. *Id.* at 23:5-8. Federal Rule of Civil Procedure 45 states that "[t]he clerk must issue a subpoena . . . to a party who requests it." Fed. R. Civ. P. 45(a)(3). The U.S. Marshal must pay the fees for witnesses "appearing pursuant to subpoenas issued upon approval of the court" for a party proceeding *in forma pauperis* in a § 2255 action. 28 U.S.C. § 1825(b). Nevertheless, the court has discretion to refuse to subpoena a witness for an indigent party in a § 2255 case in order to prevent abuse of its process. *Estep v. United States*, 251 F.2d 579, 582 (5th Cir. 1958) ("[T]he discretion of the court to refuse to subpoena witnesses for an indigent party in a civil proceeding cannot be less than its discretion to refuse to subpoena witnesses for an indigent defendant in a criminal prosecution."). When asked why he did not request the subpoena by motion before the hearing, Petitioner said only that he had "been in transit for the last month." *Instant Case, doc. 48* at 23:12-16. This excuse has little merit since Petitioner filed at least one other motion during that month. *Id.* at 23:17-21; *see also id., doc. 41*. Moreover, Petitioner had already significantly delayed the evidentiary hearing with his many motions regarding appointment and termination of counsel. *See id., docs. 17, 25, 26, 34, 35, 36, 41*. I therefore deny Petitioner's untimely request for a subpoena. *Cf.* Fed. R. Civ. P. 45(c)(3) (allowing a court, on motion, to quash a subpoena that "fails to allow a reasonable time

5

to comply").  However, at the evidentiary hearing I permitted Petitioner to make a

proffer of his brother's testimony, and will consider the proffer as if Petitioner's brother

had testified to the same.  *Id., doc. 48* at 23:25-24:19.

## IV.  EVIDENTIARY FINDINGS

At issue in this case is whether Petitioner requested his counsel, Ms. Jane Greek,

to file an appeal of his sentence.  Petitioner contends that "on October 4, 2011, [the day

of his sentencing], he directed Ms. Greek, to file a timely notice of appeal, and counsel

through neglect failed to file a notice of appeal in a timely manner."  *Id., doc. 3* at 1; *see

also id., doc. 2* at 4.  He claims that "Ms. Greek, had informed this Petitioner's brother

Mr. Deanthaney L.L. Pennington, that she would file a notice of appeal due to the

November 1, 2010, enactment of the Fair Sentencing Act."  *Id., doc. 2* at 4; *see also doc. 3* at

10.  For her part, Ms. Greek states that Petitioner never asked her to file a notice of

appeal: "I do not recall having any discussion with [Petitioner] about appeal, nor does

my file reflect any desire to appeal either before or immediately following sentencing."

*Id., doc. 8*, ex. 1 at 1-2.

When there is conflicting testimony at a § 2255 evidentiary hearing, "it is

ultimately the role of the district court . . . to assess credibility and weigh the evidence

before it."  *United States v. Gonzalez*, 209 F. App'x 842, 846-47 (10th Cir. 2006) (citing

*United States v. Browning*, 252 F.3d 1153, 1157 (10th Cir. 2001)).  Having evaluated the testimony of both Petitioner and Ms. Greek, I find Ms. Greek's account of the events in question to be more credible.

I do not find Petitioner's testimony credible for several reasons.  First and foremost, Petitioner was unable to articulate when, where, and how he asked Ms. Greek to file an appeal.  When I first asked Petitioner the circumstances in which he asked Ms. Greek to appeal, he replied, "I can't really recall to the certain dates and times of every single time I told her, because I told her so many times."  *Instant Case*, *doc. 48* at 33:10-11. I then asked him to provide a general time frame, such as before or after the sentencing hearing.  *Id*. at 33:19-24.  Petitioner again could not recall.  *Id*. at 33:25.  Not only is it implausible that Petitioner cannot describe *any* of the circumstances in which he requested an appeal, it is also inconsistent with Petitioner's pleadings and testimony.  In his § 2255 motion and supporting affidavit, Petitioner claims to have made the request on the day he was sentenced.  *Id., doc. 3* at 1, 10.  But at the evidentiary hearing, it was not until Respondent's counsel told Petitioner that it was her "understanding from what you filed with the Court [] that you spoke to Ms. Greek on the day of your sentencing and asked her to file a notice of appeal," that Petitioner stated that he had requested an appeal directly after sentencing.  *Id*., *doc. 48* at 40:21-41:7.

Even giving Petitioner the benefit of the doubt and assuming that Respondent's counsel merely jogged his memory when she referred to his request on the day of

sentencing, I find his inability to provide any specifics of that interaction with Ms.

Greek suspect.  Not only was Petitioner unable to describe the conversation, he was not

even sure whether it occurred at the courthouse or elsewhere.  *Id*. at 41:12-21.  Given

that sentencing is a major, life-changing event, I find it highly unlikely that Petitioner

cannot recall any details whatsoever about his conversation with Ms. Greek on that day.

Petitioner claims to have called Ms. Greek about twenty times during the week

after sentencing to double check that she had filed the appeal.  *Id*. at 42:17-44:2.  He

claims that he never got through to Ms. Greek and, despite leaving multiple messages,

Ms. Greek never returned his calls.  *Id*. at 44:9-45:16.  There are two possible

explanations for this, both of which are implausible: that every single one of Petitioner's

calls slipped through the cracks or that Ms. Greek was unable or unwilling to return

Petitioner's calls.

As to the first, Ms. Greek testified that it is her standard practice to make note of

phone calls, messages, and letters in each client's file, but Petitioner's file contains no

evidence that Petitioner contacted her regarding an appeal.  *Id*. at 16:7-17:13, 18:11-19:7.

Given this practice, it is highly improbable that Ms. Greek would not have recorded a

single one of Petitioner's supposed twenty calls.  As to the second possible explanation,

because Petitioner remained in the Doña Ana prison after sentencing, his contact

information did not change and he was therefore easily reachable by Ms. Greek during

the week following his sentencing hearing.  *See id*. at 34:22-25.  Moreover, there is no

reason to believe that Ms. Greek would have refused to file an appeal if Petitioner had requested it—it is her standard practice to "automatically" file an appeal if asked, regardless of merit.  *Id*. at 15:19-25.

Petitioner also claims his brother spoke with Ms. Greek in the week following his sentencing hearing and requested that she file an appeal.  *Id*. at 30:5-8.  Ms. Greek remembers speaking with Petitioner's brother during the pendency of his case but does not remember him asking her to file an appeal.  *Id*. at 25:11-23.  I find Petitioner's brother's proffered testimony suspect since Ms. Greek testified that it is her standard practice upon being contacted by a client's family regarding an appeal to reach out to the client.  *Id*. at 26:23-27:5.  She testified that if she is unable to reach the client before the appeal deadline, she would file the appeal.  *Id*. at 27:6-16.  Plaintiff's brother's proffered testimony is also questionable because he would apparently claim that Ms. Greek told him that she would file an appeal "as soon as she obtains the Court file from the Clerk's office."  *Id*., *doc. 3* at 10.  However, Ms. Greek testified that she would not need a file from the Court in order to file an appeal and therefore would not have said anything to that effect.  *Id*., *doc. 48* at 17:19-18:1.

Finally, Petitioner has a significant incentive to remember and describe the events immediately after his sentencing as involving a clear request that an appeal be filed.  If the Court accepts his version, then he would be entitled to a delayed appeal. *See United States v. Garrett*, 402 F.3d 1262, 1267 (10th Cir. 2005).

9

V.   A<span>NALYSIS</span>

### A.  Standard of review

Pursuant to 28 U.S.C. § 2255, a federal prisoner who "claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255.  Relief is available under § 2255 only if "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted).  The court must presume "that the proceedings leading to the conviction were correct"; the burden is on the petitioner to demonstrate otherwise.  *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

### B.  Law regarding ineffective assistance of counsel for failure to file an appeal

Pursuant to *Strickland v. Washington*, counsel is ineffective in violation of the Sixth Amendment if a petitioner can demonstrate both that (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defendant." 466 U.S. 668, 687-88 (1984).  "[A] lawyer who disregards specific instructions to perfect a criminal appeal acts in a

manner that is both professionally unreasonable and presumptively prejudicial." *United States v. Snitz*, 342 F.3d 1154, 1155-56 (10th Cir. 2003) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)).  This is true even if counsel believed that the appeal was without merit.  *United States v. Guerrero*, 488 F.3d 1313, 1315 (10th Cir. 2007).  Therefore, if a defendant "actually asked counsel to perfect an appeal, and counsel ignored the request," counsel was per se ineffective and "[the defendant] will be entitled to a delayed appeal." *United States v. Garrett*, 402 F.3d 1262, 1267 (10th Cir. 2005).   On the other hand, "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Flores-Ortega*, 528 U.S. at 477.

When a defendant neither instructs counsel to appeal nor asks that an appeal not be taken, counsel has a duty to "consult" with defendant—that is, "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes"—in two situations: (1) if a "rational defendant would want to appeal" or (2) if "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 478-80. "[A] highly relevant factor in this inquiry [is] whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial

proceedings." *Id.* at 480.  Failure to engage in this consultation when it is required

constitutes objectively unreasonable representation under the first prong of *Strickland*.

### C.  Ms. Greek was not ineffective

As discussed above, I credit Ms. Greek's testimony that Petitioner did not request

an appeal.  According to Ms. Greek, neither Petitioner nor his brother requested that she

file an appeal, either before or immediately after Petitioner's sentencing.  *See Instant*

*Case, doc. 48* at 16:4-19:7.  However, Ms. Greek did not testify that Petitioner

affirmatively told her *not* to file an appeal.  Therefore, this case falls within the ambit of

*Flores-Ortega*.  *Flores-Ortega* requires that counsel consult with a defendant only if a

"rational defendant would want to appeal" or if "this particular defendant reasonably

demonstrated to counsel that he was interested in appealing."  528 U.S. at 478-80.

Neither situation applies here.

First, there is no reason to conclude that a rational defendant would have wanted

to appeal because any appeal would have been frivolous.  *See Instant Case, doc. 28* at

12:24-13:3; *see Flores-Ortega*, 528 U.S. at 480 (noting it is proper to consider merits of

appeal when evaluating whether rational defendant would have wanted to appeal).

Petitioner stated at the evidentiary hearing that his motive for appealing would have

been "to gain back some time back [sic] due to the fact of my state convictions that were

illegally enhanced."  *Instant Case, doc. 48* at 38:12-13.  He argues that he was

inappropriately assessed three criminal history points based on a prior state conviction

that had been subsequently expunged.  *Id*. at 52:3-19.  An appeal on this basis would have been frivolous because, as discussed in my initial PFRD in this case which was adopted by Judge Brack, all three of Petitioner's criminal history points were correctly assessed.  *See id., doc. 10* at 8-10; *id., doc. 12*.

Second, Petitioner did not demonstrate to counsel that he was interested in appealing his sentence.  Ms. Greek testified that Petitioner never asked for an appeal, either before or after sentencing.  *Id., doc. 48* at 18:3-19:7.  Her file from Petitioner's case contains no notes regarding phone calls, letters, or discussions regarding an appeal, despite containing numerous notes on other topics. *Id.* at 16:4-17:13, 18:11-19:7.  Given that Petitioner pled guilty and knowingly waived most of his appeal rights, it was reasonable for Ms. Greek to conclude that the lack of contact indicated that Petitioner did not want to appeal.  *See id*. at 35:10-36:13.

## VI.    CONCLUSION

Because I have found Ms. Greek's testimony to be more credible than that of

Petitioner, I find that Petitioner did not request Ms. Greek to file an appeal.  Based on

these facts, I find that Ms. Greek was not ineffective in failing to file an appeal on

Petitioner's behalf.  I therefore recommend that the Court deny Petitioner's Motion

Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in

Federal Custody, *doc. 2*, and dismiss this case with prejudice.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**